**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**GLENDON GRIFFITH,**

                                        **Plaintiff,**

        **v.**                                                  **1:14-cv-1128**

**THE NEW YORK STATE DEPARTMENT**
**OF HEALTH, OFFICE OF THE MEDICAID**
**INSPECTOR GENERAL; JAMES C. COX,**
**in his individual and official capacity;**
**MAUREEN HOWLEY, in her individual and**
**official capacity; MARK HENNESSEY, in his**
**individual and official capacity; ROBERT**
**BYRNES, in his individual and official capacity;**
**LEVON AHARONYAN, in his individual and**
**official capacity; MARTIN MACK, in his individual**
**and official capacity; MAUREEN DeROSA, in her**
**individual and official capacity; CHRISTOPHER**
**BEDELL, in his individual and official capacity; and**
**JOHN and JANE DOE, currently unidentified state**
**officers, in their individual and official capacities,,**

                                        **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


                        **DECISION & ORDER**

**I. INTRODUCTION**

        Plaintiff, Glendon Griffith ("Plaintiff"), commenced this action asserting claims under

Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination and Employment

Act ("ADEA"), and 42 U.S.C. §§ 1981 and 1983.  *See* Dkt. No. 1,  ("Compl.").  Defendants

New York State Department of Health, Office of the Medicaid Inspector General ("OMIG");

1

James C. Cox ("Cox"); Maureen Howley ("Howley"); Mark Hennessey ("Hennessey"); Robert Byrnes ("Byrnes"); Levon Aharonyan ("Aharonyan"); Martin Mack ("Mack"); Maureen DeRosa ("DeRosa"); and Christopher Bedell ("Bedell")[1] move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiff's claims. *See* Dkt. No. 16. Plaintiff opposes the motion, *see* Dkt. No. 17, and Defendants reply. *See* Dkt. No. 19. Plaintiff also files a motion (essentially an unauthorized sur-reply) asking to be given leave to re-plead any claims that are dismissed. *See* Dkt. No. 20.

The Court has considered the parties' submissions and decides the instant motions without the need for oral argument. For the reasons that follow, Defendants' motion, Dkt. No. 16, is granted in part and denied in part. Plaintiff's motion, Dkt. No. 20, is granted in part and denied in part.

## II.    BACKGROUND[2]

Plaintiff is a black male, over the age of forty, whose nation of origin is the Republic of Trinidad and Tobago. (Compl. ¶¶ 5-7). OMIG's New York City regional office hired Plaintiff as a G-17 Medicaid Inspector on September 13, 1990. (Compl. ¶¶ 27-28). Plaintiff was promoted to a G-21 Medicaid Inspector II in 2008, but was removed from that position and returned to his original position in April 2009. (Compl. ¶¶ 30-31). When he inquired about the demotion, Medicaid Inspector in Charge Howley "stat[ed] in sum and substance

---

[1]OMIG, Cox, Howley, Hennessey, Byrnes, Aharonyan, Mack, DeRosa, and Bedell are referred to collectively as the "Defendants;" and Cox, Howley, Hennessey, Byrnes, Aharonyan, Mack, DeRosa, and Bedell are referred to collectively as the "Individual Defendants." The Complaint indicates that Bedell, who was the candidate selected for the position that Plaintiff sought, "is named in his individual and official capacity solely to the extent necessary to award Mr. Griffith any prospective injunctive relief." Compl. ¶ 20.

[2]For the purposes of this motion, the Complaint's factual allegations are assumed to be true. *See Fahs Constr. Group, Inc. v. Gray*, 2011 U.S. Dist. LEXIS 7822, at *5-6 (N.D.N.Y. Jan. 27, 2011).

'you don't know how Albany works.'" (Compl. ¶ 32).

Plaintiff applied for a promotion to be a G-21 Medicaid Inspector II in 2010. (Compl. ¶ 33). Kevin Dowell, Fern DePaulo, and Susan Hamill served on the panel that interviewed Plaintiff. (Compl. ¶ 33). Assistant Medicaid Inspectors in Charge Byrnes and Aharonyan supervised the panelists. (Compl. ¶ 34). Dowell allegedly told Howley that Plaintiff was the "highest ranking candidate for the promotion." (Compl. ¶ 35). Following a discussion among Howley, Byrnes, and Aharonyan regarding the promotions process, Howley contacted the panelists and asked them to remove Plaintiff as the top candidate because "Albany was questioning the selection," but the panelists refused to do so. (Compl. ¶¶ 36-38).

On October 19, 2010, Deputy Inspector General Hennessey forwarded Plaintiff's résumé to Mack, who served as then-Governor Paterson's Deputy Appointments Secretary. (Compl. ¶¶ 18, 39). Hennessey proposed that OMIG offer the promotion to Plaintiff, effective November 4, 2010. (Compl. ¶ 40). Plaintiff inquired of Byrnes and/or Howley about the status of the promotion in 2010 and/or 2011. (Compl. ¶ 41). They responded with "words to the effect that the OMIG 'was waiting on budgetary approval' and that his promotion 'would be delayed because of budget issues.'" (Compl. ¶ 41). Plaintiff did not decline the promotion, nor was he ever advised that his promotion "had expired or been controverted." (Compl. ¶ 42).

In a letter dated May 11, 2012 to Governor Cuomo's Assistant Appointments Secretary DeRosa, Hennessey proposed offering Bedell a promotion to be a G-21 Medicaid Inspector II. (Compl. ¶¶ 43-44). At that time, Bedell was a G-17 Medicaid Inspector I. (Compl. ¶ 43). Bedell is a Caucasian male from the United States who is approximately twenty years younger than Plaintiff. (Compl. ¶ 45).

Plaintiff alleges that in 2012 there were approximately fifteen occupied supervisor positions, classified as G-21 or higher, in the OMIG's New York City office. (Compl. ¶ 46). He claims that "[o]nly one of those supervisor positions was filled by a non-white individual, and none were filled by individuals of foreign national origin." (Compl. ¶ 47).

Plaintiff believes that the position offered to Bedell is the same position that was originally offered to him, and that the position remained vacant until Bedell's appointment. (Compl. ¶ 48). This position was neither publicly offered nor publicly posted. (Compl. ¶ 49). Plaintiff alleges that Bedell was not initially qualified for the position but in June 2012 OMIG changed, or asked the New York State Civil Service Department to change, the requirements so that Bedell could be appointed. (Compl. ¶¶ 50-51). On August 27, 2012, Bedell was appointed to the position. (Compl. ¶ 52). Plaintiff claims that Bedell had worked in OMIG for less than two years and had less than five years of relevant experience at the time of the promotion. (Compl. ¶ 53).

All Individual Defendants, except for Bedell, are alleged to have "directly participated in the decision to annul [Plaintiff's] promotion, change the requirements for the promotional position, and instead offer" the promotion to Bedell. (Compl. ¶ 56). All are alleged to have taken these actions because of their "discriminatory animus" toward Plaintiff based on his age, race, and national origin. (Compl. ¶ 57).

Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR") and the United States Equal Opportunity Commission ("EEOC") on March 29, 2013 "alleging discrimination based on his race and national origin." (Compl. ¶ 22). On November 4, 2013, he amended his NYSDHR complaint to also allege age discrimination. (Compl. ¶ 23). On December 24, 2013, NYSDHR issued a Determination After

4

Investigation, "finding that 'probable cause' exists to believe that discrimination based on age, race, and national origin occurred." (Compl. ¶ 24). The EEOC issued a right to sue letter on June 16, 2014. (Compl. ¶ 25). On June 25, 2014, NYSDHR issued an Amended Final Order of Dismissal for Administrative Convenience. (Compl. ¶ 26).

Plaintiff commenced this action on September 15, 2014. (*See* Dkt. No. 1). The First and Second Causes of Action allege that OMIG and Cox are liable for damages for engaging in racial and national origin discrimination in violation of Title VII. (Compl. ¶¶ 64-71). In the Third Cause of Action, which arises under the ADEA, Plaintiff seeks "prospective injunctive relief" against the Individual Defendants in their individual capacities "in the form of a promotion to a G-21 Medicaid Inspector II and/or promotion to a higher grade and title." (Compl. ¶ 72-74). Finally, in the Fourth and Fifth Causes of Action, which arise under 42 U.S.C. §§ 1981 and 1983, Plaintiff seeks monetary damages against the Individual Defendants in their individual capacities and prospective injunctive relief against them in their official capacities "in the form of a promotion to a G-21 Medicaid Inspector II and/or promotion to a higher grade and title." (Compl. ¶ 75-86).

## III.    STANDARD OF REVIEW

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). On a motion to dismiss, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted). This tenet does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* While Rule 8(a) (2) "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me-accusation." *Id.* (citation and internal quotation marks omitted). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient. *Id.* (citation omitted).

## IV.    DISCUSSION

### a.  Viability of both § 1981 and § 1983 Claims

Defendants argue that all § 1981 claims should be dismissed because §1983 is the exclusive federal remedy for the rights guaranteed in § 1981 by state actors. Plaintiff contends that "[s]ince Plaintiff's § 1981 cause of action is reviewed under the same analysis as § 1983," and because his § 1983 claims are legally cognizable, the § 1981 claims should not be dismissed. Pl. Mem. L. p. 13.

Section 1981 provides in part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens...." 42 U.S.C. § 1981(a). However, the Supreme Court has held that "'the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state

6

governmental units...."" *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Jett v. Dallas Independent School District*, 491 U.S. 701, 733, 109 S. Ct. 2702, 105 L. Ed.2d 598 (1989)). This holding has been interpreted to apply to governmental entities as well as state actors sued in their individual capacities. *Whaley v. City Univ. of New York*, 555 F. Supp.2d 381, 400-01 (S.D.N.Y. 2008).

"It is unclear in this Circuit whether [§ 1981(c), enacted in 1991,] has allowed for actions against municipal entities under § 1981," *Shapiro v. City of New York*, 2015 WL 4002437, at *4, n. 2 (S.D.N.Y. July 01, 2015)(citing *Anderson v. Conboy*, 156 F.3d 167, 178 n. 19 (2d Cir. 1998) and *Whaley* 555 F. Supp.2d at 401)), or for similar claims against individual state actors. *See Whaley*, 555 F. Supp. 2d at 400-01. This question remains unanswered. *See Howard v. City of New York*, 602 Fed. Appx. 545, 547, n. 1 (2d Cir. 2015).[3] In light of the uncertainty in this area, the majority of the district courts have "decline[d] to deviate from the Supreme Court's analysis of § 1981 in *Jett*," and have dismissed § 1981 claims which encompass the same substantive right encompassed in the § 1983 claim. *Whaley*, 555 F. Supp.2d at 401 (collecting cases); *see Gladwin v. Pozzi,* 403 Fed. Appx. 603, 605 (2d Cir. 2010)(summary order)("As the district court noted, Gladwin's §

---

[3]In *Howard* the Circuit wrote:

Because § 1981 and § 1983 claims are each analyzed under *McDonnell Douglas* and we conclude that Howard's discrimination claims fail under this framework, we need not here decide whether independent recovery for race discrimination by state actors is available under § 1981. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733, 109 S. Ct. 2702, 105 L. Ed.2d 598 (1989) (holding that the "express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units"); *Anderson v. Conboy*, 156 F.3d 167, 178 n. 19 (2d Cir. 1998) (reserving decision as to whether § 1981(c), amended by Civil Rights Act of 1991, "creates an implied private right of action against state actors ... statutorily overruling *Jett*"); *see also Whaley v. City Univ. of New York*, 555 F. Supp.2d 381, 401 (S.D.N.Y.2008) (recognizing that "Second Circuit has not yet ruled on this issue").

7

1981 claims are encompassed by her § 1983 claims, and both are therefore analyzed under § 1983.")(citing *Jett*, 491 U.S. at 735); *Martinez v. Santamaria*, 2015 WL 4241398, at *5 (S.D.N.Y. July 13, 2015)("Where an individual defendant has acted on behalf of the state, § 1983 provides the exclusive federal damages remedy.")(citation omitted); *Jeune v. City of New York,* 2014 WL 83851, at *3 (S.D.N.Y. Jan. 09, 2014)("The Second Circuit has not yet ruled on the issue in a precedential holding, and so this Court continues to follow *Jett*. All of Plaintiff's Section 1981 claims are therefore subsumed by the claims under Section 1983, and must be dismissed."); *Hogan v. Cnty. of Lewis, New York*, 929 F. Supp.2d 130, 150–51 (N.D.N.Y. 2013) ("Plaintiffs' claims against the Lewis County Defendants under § 1981 are barred by the exclusive remedial provision of § 1983."); *Blythe v. City of New York,* 963 F. Supp.2d 158, 171, n. 5 (E.D.N.Y. 2013)("The Court sees no reason to depart form the analysis in *Whaley*, particularly in light of (1) the Second Circuit's recent application of *Jett* without discussion of § 1981(c) in *Gladwin*, 403 Fed. Appx. at 605, and (2) the fact that this Court has been unable to locate a Second Circuit decision resolving the issue noted in *Whaley*."); *Whaley*, 555 F. Supp.2d at 401 ("In any event, as noted, Dr. Whaley does not assert any substantive right under § 1981 that is not encompassed in his § 1983 claims").

Based on the weight of authority, and in light of the allegations in the Complaint indicating that the substantive rights encompassed in Plaintiff's § 1981 claims are also encompassed in his § 1983 claims, *compare* Compl. ¶ 75 ("The individually named defendants' conduct constitutes intentional discrimination based on plaintiff's race, in violation of plaintiff's entitlement to equal rights under § 1981.") *with id.* ¶¶ 80-86 ("By engaging in disparate treatment against plaintiff, while acting under color of state law, the

8

individually named defendants violated plaintiff's entitlement to equal protection under the law . . . [and] are therefore liable to plaintiff . . . under § 1983."), all § 1981 claims are dismissed.

### b.  Timeliness of Plaintiff's April 2009 Demotion Claims

Defendants argue that all claims arising from Plaintiff's April 2009 demotion are time barred.  Plaintiff counters that these claims are timely under the "continuing violation" doctrine.

#### 1.  Title VII and ADEA Claims

"In a state such as New York, where there is an administrative agency authorized to investigate claims of discrimination, a Title VII claim is only actionable with respect to incidents that occur within 300 days of the filing of an administrative complaint." *Glaser v. Fulton-Montgomery Community Col.*, 50 Fed. Appx. 17, 19 (2d Cir. 2002);  *see also* 42 U.S.C. § 2000e-5(e).  "A claim is time barred if it is not filed within these time limits." *National Passenger R.R. Corp. v. Morgan*, 536 U.S. 101, 109 (2002).  The time limitations and prerequisites set forth in Title VII also apply to the ADEA. *See Almontaser v. N.Y. City Dep't of Educ.*, 2014 U.S. Dist. LEXIS 92760, at *13 (E.D.N.Y. July 8, 2014) ("In New York, claims under Title VII and the ADEA are subject to a 300-day statute of limitations—claims that accrued more than 300 days before the filing of a charge with the EEOC are time-barred.") (citing *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996) (Title VII); *Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 328-29 (2d Cir. 1999) (ADEA)).

Plaintiff alleges that he was demoted from his position as a G-21 Medicaid

Investigator II in April 2009. (Compl. ¶ 31). To pursue Title VII and ADEA claims relating to this demotion, Plaintiff was required to file his administrative complaints by February 2010. He filed his administrative complaints in March 29, 2013. He argues, however, the 2009 demotion was part of a continuous practice that continued until Bedell was promoted in 2012. Therefore, he argues, "the statute of limitations should be tolled under the continuing violation doctrine." Pl. Mem. L. pp. 6-7.

"[T]he continuing violation doctrine extends the limitations period for all claims of discriminatory acts committed under an ongoing policy of discrimination even if those acts, standing alone, would have been barred by the statute of limitations." *Robles v. Cox & Co., Inc.*, 841 F. Supp.2d 615, 627 (E.D.N.Y. 2012) (internal quotations and citations omitted)). However, the continuing violation doctrine is inapplicable to "[d]iscrete acts such as termination [and] failure to promote," even when they are related to acts alleged in timely filed charges. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002); *see Mohamed v. NYU*, 2015 WL 3387218, at *15 (S.D.N.Y. May 21, 2015)("[T]he Court held [in *Morgan*] that 'discrete discriminatory acts'—including, for example, refusals to hire, failure to promote, or terminations—'are not actionable if time barred, even when they are related to acts alleged in timely filed charges.'")(citing and quoting *Morgan*, 526 U.S. at 113–14). Rather, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 526 U.S. at 113–14. "In practice, then, the continuing-violation rule applies only to claims amounting to assertions of hostile-work environment or similar claims that 'cannot be said to occur on any particular day' but rather are the product of events that take place 'over a series of days or perhaps years.'" *Mohamed*, 2015 WL 3387218, at *15

10

(quoting *Morgan*, 536 U.S. at 115).

"*Morgan* established that an employer's failure to promote is by its very nature a discrete act ... which [when it] fall[s] outside the limitations period, cannot be brought within it." *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 155–58 (2d Cir. 2012). Likewise, "a demotion, like a termination, is a discrete act which is consummated at the time it is made, and is not of a continuing nature." *LaBeach v. Nestle Co., Inc.*, 658 F. Supp. 676, 688 (S.D.N.Y. 1987); *see also Jackson v. New York State Office of Mental Health,* 2012 WL 3457961, at *6 (S.D.N.Y. Aug. 13, 2012)(finding that a demotion is a discrete act). Even if related to subsequent action regarding Plaintiff's application for the G-21 Medicaid Inspector II position, the 2009 employment action is a discrete act. Thus, the continuing violations doctrine does not apply. *See Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir.1997)(repeated demotions and denial of pay increases not sufficient for continuing violation theory); *see also Mohamed*, 2015 WL 3387218, at *16 ("[A]llegations of 'separate instances of alleged unlawful conduct, occurring at different times and under different circumstances, without a non-conclusory factual connection — rather than a common policy under which all the actions were carried out' — are insufficient to invoke the continuing-violation doctrine.") (quoting *Jackson v. New York State*, 523 Fed. Appx. 67, 69 (2d Cir. 2013)); *Hills v. Praxair, Inc.*, 2012 WL 1935207, at *11 (W.D.N.Y. May 29, 2012)("The fact that these incidents occurred not once, but several times, is not enough to trigger application of the continuing violation doctrine. . . . To establish the kind of pattern or practice Plaintiff is alleging, he would instead need to present multiple incidents of discrimination against individuals in a particular protected class and show that these were

the result of some policy or mechanism.") (citations omitted).  Consequently, the Title VII and ADEA claims regarding the 2009 employment action are dismissed as time barred.[4]

### 2.  Section 1983 Claims[5]

"The statute of limitations applicable to claims brought under § . . . 1983 in New York is three years."  *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004).  Plaintiff commenced the instant action on September 14, 2014, more than three years after the 2009 employment determination. (*See* Dkt. No. 1).  He contends, however, that the § 1983 claims arising from the 2009 employment action are also timely under the continuing violation doctrine.

While the continuing violation doctrine applies in § 1983 actions, it is governed by the "continuous practice and policy of discrimination" requirement articulated in *Morgan*.  *See Sherman v. Town of Chester*, 752 F.3d 554, 566-67 (2d Cir. 2014); *Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013) (*per curiam*); *Golodner v. City of New London, Conn.*, 2015 WL 1471770, at *2 (D. Conn., March 31, 2015).  Thus, where the basis of a § 1983 claim is a discrete act, the continuing violation doctrine is unavailable. *See Smith v. New York City Dept. of Educ.*, 524 Fed. Appx. 730, 732 (2d Cir. 2013)(summary order)("Smith's reliance on the continuing violation doctrine to avoid dismissal of [his § 1983] claims is misplaced, as each of the allegedly retaliatory events was a discrete action, not an 'ongoing policy' of retaliation.")(citing *Morgan*, 536 U.S. at 114 and *Harris v. City of*

---

[4]This is not to say that the circumstances surrounding the 2009 demotion may not be relevant to the timely-asserted claims, but only that the 2009 demotion itself cannot form the basis of a separate claim.

[5]Defendants also argue that the § 1981 claims, which have the same statute of limitations as § 1983 claims (*see Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004)), are untimey regarding the 2009 employment action.  Because the Court has dismissed the § 1981 claims, it does not reach this issue.

*New York*, 186 F.3d 243, 250 (2d Cir. 1999)); *Ames v. New York Dept. of Corrections and Community Supervision,* 2015 WL 4126326, at *6 (N.D.N.Y. March 24, 2015)("Each of these retaliatory acts, as alleged, were discrete actions, and there is no basis to apply the continuing violation doctrine."); *Golodner*, 2015 WL 1471770, at *2 ("An allegation of several unlawful acts, even similar ones, does not, in and of itself, establish a continuing violation.")(interior citations and quotation marks omitted); *Frankel v. New York Office of Children & Family Services*, 2015 WL 1290973, at *3 (S.D.N.Y. March 23, 2015)("Section 1983 claims have a three year statute of limitations unless the Plaintiff presents evidence of a continuing violation. Discrete or isolated acts are insufficient to invoke the continuing violation doctrine.")(citing, *inter alia*, *Morgan*, 536 U.S. at 113-15).

For reasons discussed above, the § 1983 claims based on the 2009 employment action are dismissed as barred by the applicable statute of limitations.

### c.  Title VII and ADEA Claims against Individual Defendants

Defendants move to dismiss Plaintiff's Title VII claims asserted against Cox (Compl. ¶¶ 67, 71), and the ADEA claims asserted against the Individual Defendants (Compl. ¶ 74), arguing that neither Title VII nor the ADEA allows for individual liability.  Plaintiff responds that he does not allege individual liability claims under Title VII, but rather alleges that "the OMIG and the Inspector General are ... liable to plaintiff [under Title VII], as employers . . . ." Pl. Mem. L. p. 8 (quoting Compl. ¶¶ 67, 71).  As to the ADEA claims, Plaintiff argues that he seeks only prospective injunctive relief against the Individual Defendants "in their official capacities," which, he contends, is allowed.  *Id.* pp. 8-9.

### 1. Title VII Claims against Medicaid Ins. Gen. Cox

Title VII does not subject individuals to personal liability, even when the individual serves as the plaintiff's supervisor. *See Spiegel v. Schulmann,* 604 F.3d 72, 79 (2d Cir. 2010); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742 (1998). "Furthermore, Title VII . . . do[es] not provide for suits against individuals in their official capacity where, as here, the employer entity can be named as a defendant." *Williams–Velasquez v. Guardian Life Ins. Co.*, 2003 WL 22038567, at *8 (S.D.N.Y. Aug. 29, 2003); *see Yu v. New York State Unified Court System Office of Court Admin.*, 2013 WL 3490780, at *4 (S.D.N.Y. July 12, 2013)("Further, a plaintiff may not bring a Title VII claim against an individual in his or her official capacity if the claim is duplicative of the claim against the public employer, as it is here."); *see also McNamara v. Kaye*, 2008 WL 3836024, at *8 (E.D.N.Y. Aug. 13, 2008) ("[L]awsuits against state officers acting [in] their official capacity . . . are considered to be lawsuits against the state."). To the extent Plaintiff alleges Title VII claims against Cox in his official capacity as Medicaid Inspector General, the claims are dismissed because OMIG is named as a defendant.

### 2. ADEA Claims for Prospective Injunctive Relief

The ADEA claims brought against the Individual Defendants in their official capacities raise Eleventh Amendment sovereign immunity issues. Eleventh Amendment immunity has not been abrogated by the ADEA. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 82–83 (2000); *Skalafuris v. City of New York*, 444 Fed. Appx. 466, 468 (2d Cir. 2011). Thus, an ADEA claim against New York, or one of its agencies, is barred by this immunity.

Eleventh Amendment immunity also extends to suits for damages against state officers in their official capacities. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 71 (1989)("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.") (internal citation omitted). However, a narrow exception to this immunity allows a federal court to issue an injunction against a state official in his or her official capacity who is acting contrary to federal law. *Ex Parte Young*, 209 U.S. 123 (1908); *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 102 (1984); *New York Health and Hospitals Corporation et al. v. Perales*, 50 F.3d 129 (2d Cir. 1995).

Various courts in this circuit have recognized the legal viability of official capacity ADEA claims provided the claims seek only prospective injunctive relief. *See Nutt v. New York*, 2012 WL 4006408, at *1 (N.D.N.Y. Sept. 12, 2012); *Roddini v. City Univ. of New York*, 2003 WL 435981, at *3 (S.D.N.Y. Feb. 21, 2003); *Siani v. State University of New York at Farmingdale*, 7 F. Supp.3d 304, 317 (E.D.N.Y. 2014); *Schwartz v. York College*, 2009 WL 3259379, at *3 (E.D.N.Y. March 31, 2009); *but see Bottge v. Suburban Propane*,77 F. Supp.2d 310, 313 (N.D.N.Y. 1999);[6] *Pemrick v. Stracher*, 67 F. Supp.2d 149, 169 (E.D.N.Y. 1999).[7] Based upon these cases, the Court finds that official capacity ADEA claims seeking

---

[6]In *Bottge v. Suburban Propane*,77 F. Supp.2d 310, 313 (N.D.N.Y. 1999), Judge Kahn wrote that *"Tomka*'s individual liability bar applies to individual defendants in their official capacities, as well as to situations where the plaintiff seeks prospective injunctive relief against such individuals, under both Title VII and the ADEA." However, the motion that Judge Kahn was considering concerned *only* Title VII claims, *see id.* ("Plaintiff contends that she is entitled to bring Title VII claims against defendants Alexander and Macdaid in their official capacities even if they will not be financially liable under the statute."), and there is no indication whether the plaintiff was seeking prospective injunctive relief against the individual defendants under the ADEA. *Id.* Thus, the reference to the ADEA in *Bottge* must be considered *obiter dictum.*

[7]In *Pemrick*, the Eastern District reached the same conclusion as did Judge Kahn, that is "that *Tomka*'s individual liability bar applies to individual defendants in their official capacities, as well as to

(continued...)

only prospective injunctive relief may be legally cognizable. But "Plaintiff's . . . Eleventh–Amendment problem is that he has cast his claims too broadly for *Ex parte Young*. That exception to sovereign immunity only authorizes suit against officials with the authority to provide the requested relief." *Siani*, 7 F. Supp.3d at 317. Plaintiff seeks "prospective injunctive relief under the ADEA, in the form of a promotion to a G-21 Medicaid Investigator II and/or promotion to a higher grade and title." Compl. ¶ 74. The Complaint alleges that Defendant Cox is named "in his official capacity as the appointing authority under the New York Public Health Law §32." Compl. ¶10. Plaintiff has not alleged that any of the other Individual Defendants have similar "appointing authority." *See* Compl. ¶¶ 14-19. Thus, the ADEA claims against all Individual Defendants, except Cox, are dismissed. *See Siani*, 7 F. Supp.3d at 317 ("Here, only Keen has the authority to reinstate plaintiff and provide the other injunctive relief he seeks. Therefore, the official-capacity claims against any of the individual defendants besides Keen are dismissed.").

### d.  Sufficiency of Title VII, ADEA, and § 1983 Allegations

Defendants argue that "the Complaint fails to sufficiently allege that the decision to promote Bedell was due to any discriminatory animus toward Plaintiff's age, race, or national origin." Def. Mem. L., p. 10. Plaintiff counters that allegations in the Complaint plausibly indicate that "he was summarily removed from a promotional position, that his re-application for this promotional position was initially tampered with, and ultimately redirected

---

[7](...continued)
situations where the plaintiff seeks prospective injunctive relief against such individuals, under both Title VII and the ADEA. " But in *Pemrick,* the Court allowed the ADEA claim to proceed against the plaintiff's joint, integrated employer (the State University of New York SUNY and the Research Foundation of SUNY) without any reference to Eleventh Amendment immunity.  Because *Pemrick* does not address Eleventh Amendment immunity when discussing the ADEA claims, the Court finds it to be of limited authority.

16

to a less qualified younger Caucasian male from the United States, and that these actions fit within Defendants' pattern of promoting almost exclusively Caucasians from the United States." Pl. Mem. L. p. 12.

To survive a motion to dismiss, "a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a *prima facie* case of discrimination under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Twombly*, 550 U.S. at 569 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002)). Nevertheless, the elements of a *prima facie* case "provide an outline of what is necessary to render [a plaintiff's employment discrimination] claims for relief plausible." *Sommersett v. City of New York*, 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011).

To state a claim for employment discrimination under Title VII or the ADEA, a plaintiff must allege that he suffered an adverse employment action because of his race, color, religion, sex, national origin, or age. 42 U.S.C. § 2000e–2(a); 29 U.S.C. § 623(a). A § 1983 discrimination claim asserted as an equal protection violation is analyzed under the same framework as a Title VII or ADEA claim. *See Chick v. County of Suffolk,* 546 Fed. Appx. 58, 59 (2d Cir. 2013); *Patterson*, 375 F.3d at 225; *Back v. Hastings on Hudson Union Free School Dist.,* 365 F.3d 107, 123 (2d Cir. 2004); *Bohnet v. Valley Stream Union Free Sch. Dist. 13*, 30 F. Supp. 3d 174, 181 (E.D.N.Y. 2014) *aff'd*, 594 Fed. Appx. 53 (2d Cir. 2015). To establish a *prima facie* case of discriminatory failure to promote, a plaintiff must demonstrate that "'[he] applied for an available position for which [he] was qualified, but was rejected under circumstances giving rise to an inference of unlawful discrimination.'" *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998) (quoting *Tex. Dep't of Cmty. Affairs*

*v. Burdine*, 450 U.S. 248, 253 (1981)); *see also Carter v. Verizon*, 2015 WL 247344, at *4 (S.D.N.Y. Jan. 20, 2015). "The Circuit has held that when a plaintiff applies for and is denied a position, the fact that the position was filled by someone outside of the plaintiff's protected class is itself enough to give rise to such an inference [of discrimination]." *Feliciano v. City of New York*, 2015 WL 4393163. at *4 (S.D.N.Y. July 15, 2015)(collecting cases).

The allegations in the Complaint set forth plausible claims of race, national origin, and age discrimination in connection with Plaintiff's application for promotion back to the G-21 Medicaid Inspector II position. The position was awarded to Bedell, a Caucasian male from the United States who is approximately twenty years younger than Plaintiff and who has considerably less experience than Plaintiff. This alone, even without proof that the employer engaged in a "pattern of promoting almost exclusively Caucasians from the United States," is sufficient. Defendants' motion on this ground is denied.

### e. Personal Involvement for § 1983 Claims

Defendants argue that the "Complaint is devoid of any factual allegations as to how the Individual Defendants were personally involved" in the adverse employment actions against Plaintiff such to sustain § 1983 claims against them. Def. Mem. L. p. 14. Plaintiff counters:

> [T]he Complaint alleges that Ms. Howley, Mr. Byrnes, and Mr. Aharonyan personally and directly tampered with his promotion, provided Mr. Griffith with pretextual justifications for its actions knowing that such justifications were false, requested a change in the requirements for the promotional position, and promoted Mr. Bedell. Dkt 1 at ¶36-37, 41, 50. Mr. Hennessey, Mr. Mack, and Ms. DeRosa were each directly involved in the decision to first promote Mr. Griffith, only to subsequently promote Mr. Bedell to the same position. Dkt 1 at ¶39-40, 43-44.

18

Pl. Mem. L. pp 12-13.

"Unlike Title VII, ... § 1983 hold[s] individuals liable for discriminatory and retaliatory conduct if there is 'some affirmative link to causally connect the actor with the discrimination action,' such that the claim is 'predicated on the actor's personal involvement.'" *Hagan v. City of New York*, 39 F. Supp.3d 481, 514 (S.D.N.Y. 2014) (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000)).  Personal involvement can be established by showing that the defendant participated directly in the alleged constitutional violation; the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or the defendant exhibited deliberate indifference to the rights of the plaintiff by failing to act on information indicating that unconstitutional acts were occurring. *Feliciano*, 2015 WL 4393163, at *14-*15 (citation omitted).

The allegations in the Complaint concerning Howley, Byrnes, Aharonyan, Hennessey, Mack, and DeRosa's relevant conduct, as recited above, present plausible claims of personal involvement by each sufficient to survive a motion to dismiss. However, Plaintiff does not present facts indicating the personal involvement of Cox or Bedell in the employment decisions in issue.  The Complaint alleges that "[o]n information and belief, the Inspector," the Individual Defendants sans Bedell, and the John and Jane Doe defendants "directly participated in the decision to annul Mr. Griffith's promotion, change the requirements for the promotional position, and instead offer promotions to Mr. Bedell."

19

Compl. ¶56. However, despite this conclusory statement, the factual allegations concerning Cox do not indicate that he had any personal involvement in the employment decisions related to Plaintiff. Thus, the allegation at ¶56 concerning Cox is nothing more than "an unadorned, the-defendant-harmed-me-accusation" found insufficient in *Iqbal*, 556 U.S. at 678. Accordingly, the motion to dismiss the § 1983 claims is denied as to Howley, Byrnes, Aharonyan, Hennessey, Mack, and DeRosa, but granted as to Cox and Bedell.

### f. Plaintiff's Motion to Re-Plead Dismissed Claims

Under Fed. R. Civ. P. 15, plaintiffs are generally given an opportunity to re-plead dismissed claims unless re-pleading would be futile. For the reasons discussed above, it would be futile to re-plead the § 1981 claims; the time-barred § 1983, Title VII and ADEA claims regarding the 2009 employment action; and the Title VII claims against Cox in his official capacity. It is possible, however, for Plaintiff to re-plead legally cognizable ADEA claims against the Individual Defendants, and § 1983 claims against Cox and Bedell. Plaintiff's motion for leave to re-plead is granted to this extent. Plaintiff is granted leave of thirty (30) days to file an amended complaint.

## V. CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss Plaintiff's claims, Dkt. No. 16, is **GRANTED in part and DENIED in part**. The motion is granted inasmuch as the following claims are dismissed:

- all § 1981 claims;
- all Title VII and ADEA claims regarding the 2009 employment action;
- all § 1983 claims regarding the 2009 employment action;
- all Title VII claims against Cox in his official capacity;
- the ADEA claims against all Individual Defendants, except Cox; and

20

- the § 1983 claims against Cox and Bedell.

The motion is denied in all other respects.

Plaintiff's motion for leave to re-plead, Dkt. No. 20, is **GRANTED in part** and **DENIED in part**. The motion is granted inasmuch as Plaintiff is given leave of thirty (30) days to file an amended complaint re-pleading ADEA claims against the Individual Defendants, and § 1983 claims against Cox and Bedell. The motion is denied in all other respects.

**IT IS SO ORDERED.**

Dated: July 28, 2015

Thomas J. McAvoy
Senior, U.S. District Judge